IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Latonya A. Thompson,<br><br>                Plaintiff,<br><br>v.<br><br>Michael J. Astrue,<br>Commissioner of Social Security,<br><br>                Defendant.<br>_____ | C/A No. 0:09-1913-TLW-PJG<br><br><br><br>**REPORT AND RECOMMENDATION** |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, Latonya A. Thompson ("Thompson"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying her claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").

**ADMINISTRATIVE PROCEEDINGS**

In 2006, Thompson applied for SSI and DIB. Thompson's applications were denied initially and on reconsideration and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on October 23, 2008 at which Thompson appeared and testified and was represented by Stacey B. Deveaux, Esquire. After hearing testimony from a vocational expert, the ALJ issued a decision dated January 22, 2009 finding that Thompson was not disabled. (Tr. 9-20.)

Thompson was thirty-two years old at the time of the ALJ's decision. She has a high school education and completed one semester of college and has past relevant work experience as a patient care technician, fast food worker, customer service representative, and delivery worker. (Tr. 26-29,

117, 136.) Thompson alleges disability since May 1, 2005 due to diabetes, diabetic neuropathy in her legs, manic depression, high blood pressure, and tachycardia. (Tr. 116.)

The ALJ made the following findings and conclusions:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since May 1, 2005, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: diabetes mellitus, diabetic neuropathy, a major depressive disorder and a panic disorder (20 CFR 404.1521 *et seq*. and 416.921 *et seq*.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

\* \* \*

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry twenty pounds occasionally and ten pounds frequently. The claimant can stand or walk for six hours per eight-hour workday and can sit for six hours per workday. She can never climb ladders, ropes or scaffolds and can only occasionally climb ramps and stairs, balance, stoop, kneel[,] crouch and crawl. The claimant must avoid hazards such as unprotected heights and dangerous machinery. She can only perform unskilled work in a low stress environment (defined as requiring few decisions) with no interaction with the public.

\* \* \*

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

\* \* \*

7. The claimant was born on November 16, 1976 and was 28 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. The claimant has no skills that would transfer to other work and transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has

*PJG*

> transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

\* \* \*

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 1, 2005 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 14-20.)

Thompson filed a request for Appeals Council review and submitted additional evidence in support of her claim. On May 22, 2009, the Appeals Council denied Thompson's request for review and concluded that none of the additional evidence provided a basis for changing the ALJ's decision, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-4.) Thompson filed this action on July 20, 2009.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). The regulations require the ALJ to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4) whether the claimant can perform [her] past relevant work; and

(5) whether the claimant's impairments prevent [her] from doing any other kind of work.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's

PJG

decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig, 76 F.3d at 589. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775 (4th Cir. 1973).

## ISSUES

Thompson raises the following issues for this judicial review:

I. The ALJ's decision is not supported by substantial evidence.

II. The ALJ erred by failing to accurately consider the functional limitations related to Ms. Thompson's severe peripheral neuropathy in the determination [of] the plaintiff's residual functional capacity[.]

III. The ALJ erred in failing to inquire about the limitations resulting from the ankle injury and subsequent surgeries despite the fact that Ms. Thompson was still utilizing a cane.

IV. The ALJ erred in failing to consider the symptoms and limitations resulting from Ms. Thompson's neurocardiogic syncope which caused her to repeatedly faint.

V. The ALJ erred in finding that Ms. Thompson could perform light work.

VI. The ALJ erred by failing to give the primary treating physician[']s opinion sufficient weight[.]

VII. The decision is not supported by substantial evidence because all of the pertinent medical records were not included in the exhibit file.

(Pl.'s Br., ECF No. 11 at 1-2.)



**DISCUSSION**

A. **Treating Physicians**

Thompson alleges that the ALJ erred in rejecting opinions from two of her treating physicians, Dr. Russell D. Hall and Dr. Claben Barraca.[1]

Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). "If [the Commissioner] finds that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, [the Commissioner] will give it controlling weight." Id.; cf. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*) ("Although the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not *require* that the testimony be given controlling weight.") (emphasis added). If controlling weight is not accorded, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).

---

[1] In her brief, Thompson also refers to a "Dr. Carraba"; however, this appears to be a typographical error in referring to Dr. Barraca.



As noted by the ALJ, Dr. Barraca, a psychiatrist, began treating Thompson in October 2006. On May 15, 2007, Dr. Barraca stated that Thompson suffered from depression, decreased energy, suicidal thoughts, decreased sleep, anhedonia, and anxiety. With regard to concentration and persistence, Dr. Barraca opined that Thompson is moderately impaired in (1) handling detailed instructions; (2) the ability to maintain concentration and attention for extended periods; (3) the ability to perform activities within a schedule, be punctual, and maintain regular attendance; (4) the ability to sustain ordinary routine without supervision; (5) the ability to work in coordination with or proximity to others without be distracted by them; and (6) the ability to make simple work-related decisions. (Tr. 524-25.) He also opined that Thompson had marked limitations in the ability to complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Specifically, Dr. Barraca stated that Thompson would be absent from work more than three times per month. (Tr. 525, 526.)

The ALJ found

> Dr. Barraca's opinion to be somewhat consistent with the objective mental health evidence of record, and [gave] it some weight. However, the [ALJ was] unable to accept his conclusion with regard to [Thompson's] ability to complete a workweek and required absences, as his objective treatment records reveal no support for such a conclusion. For example, on May 15, 2007, the same date as his opinion, Dr. Barraca found the claimant to have no manic symptoms or psychotic symptoms. Her thought process was also goal-directed and her thought content was normal. In addition, on July 5, 2007, the claimant informed Dr. Hall that her depression was under good control.[2]

---

[2] The court observes that the ALJ gave significant weight to the opinions of a consultative examiner and a state examiner. While Thompson is correct that both of these examinations were performed prior to Thompson's treatment with Dr. Barraca, contrary to Thompson's assertion, the ALJ does not appear to have rejected Dr. Barraca's opinion based on these opinions.

Page 7 of 11
PJG

(Tr. 18-19) (internal citations omitted). Based on a review of the record and the ALJ's decision, the court cannot say that the ALJ's decision to partially discount Dr. Barraca's opinion on this basis is supported by substantial evidence. The ALJ appears to have overlooked or ignored numerous treatment notes of Dr. Barraca supporting his opinion that Thompson could not complete a workweek due to frequently required absences. A review of Dr. Barraca's notes from May 15, 2007 reveals that Thompson also expressed suicidal ideation but had no plan, that she remained depressed, and that her condition was unchanged from prior visits. Further, Thompson reported visiting the emergency room the prior week due to a "panic attack." (Tr. 532.) Other notes from Dr. Barraca reveal similar reports. Further, although Thompson may have informed Dr. Hall on July 5, 2007 that her depression was under good control, Dr. Barraca noted on July 17, 2007 that Thompson's condition had worsened. (Tr. 530.) Also, as mentioned by Thompson in her brief, Dr. Barraca's notes appear to indicate that Thompson was hospitalized for another suicide attempt in August of 2007. (See Pl.'s Br. at 27-28, ECF No. 11 at 27-28) (citing Tr. 565). These notes belie the ALJ's conclusion that Dr. Barraca's "objective treatment records reveal no support" for his conclusions concerning Thompson's absences and that Thompson would have marked limitations in completing a normal workweek. At the very least, the ALJ's failure to address the portions of Dr. Barraca's treatment notes that appear to support Thompson's alleged inability to work prevents the court from determining that the ALJ's decision to reject a treating physician's opinion is supported by substantial evidence and consistent with controlling law. Accordingly, while the court may not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of

the [Commissioner]," Craig, 76 F.3d at 589, the court is constrained to remand this issue for further explanation and review of Dr. Barraca's opinion.[3]

The ALJ also gave little weight to Dr. Hall's opinion that stated Thompson has diabetic neuropathy, diabetes, and panic disorder and "is totally disabled and unable to perform any type of work for at least one year." (Tr. 518.) The ALJ stated that he gave this opinion little weight, finding it "inconsistent with the lack of objective medical evidence at that time, and Dr. Hall's own lack of objective findings on exam." (Tr. 17.) However, in a treatment note dated June 9, 2006, Dr. Hall stated that Thompson

> [w]ent to Dr. Nancy Voight for psychological testing and was found to have panic disorder and depression due to diabetic complications. The panic is still present. Neuropathy is severe. She can't work because of neuropathic pain in her legs and cannot afford Lyrica.

(Tr. 474.) In light of the court's recommendation that this matter be remanded for further consideration of Dr. Barraca's opinion, the court finds it appropriate for the ALJ to also further evaluate Dr. Hall's opinion.

**B.      Remaining Issues**

Thompson appears to allege that there is additional evidence that is not contained in the record, such as hospital records from an emergency room visit on July 20, 2007 mentioned in Dr. Hall's records. (Tr. 555.) This issue may be addressed on remand. The court expresses no opinion as to the propriety of considering this evidence in the event that the records were never submitted to the ALJ or Appeals Council.

---

[3] The court observes that the ALJ gave significant weight to a consultative examination and a review by a state examiner; however, these were both performed prior to Thompson's treatment with Dr. Barraca.

The reconsideration of the treating physicians' opinions, including the additional evidence submitted to the Appeals Council, may affect the ALJ's determination as to the subsequent steps of the sequential evaluation. Therefore, the court cannot determine whether the ALJ's conclusions as to the remainder of the sequential process are supported by substantial evidence. Further, the ALJ's reconsideration of the above issues may render Thompson's remaining issues moot. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments).

## RECOMMENDATION

The court cannot determine based on the record before it whether the Commissioner's decision is supported by substantial evidence. Therefore, the court recommends that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be remanded to the Commissioner for further administrative action as set forth above.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

October 6, 2010
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).